## AMERICAN BUTTON–HOLE, OVER-SEAMING & SEWING–MACH. CO., (PARHAM v.)

[See Parham v. American Button-Hole, Over-Seaming & Sewing-Mach. Co., Case No. 10,713.]

---

## AMERICAN CENT. INS. CO., (GRACE v.)

[See Grace v. American Cent. Ins. Co., Case No. 5,648.]

---

## Case No. 293.

### AMERICAN COTTON–TIE CO. v. SIMMONS et al.

[3 Ban. & A. 320;[1] 13 O. G. 967.]

Circuit Court, D. Rhode Island. June, 1878.[2]

PATENTS FOR INVENTIONS—LICENSE "TO USE ONCE ONLY."

1. When the proprietors of a patented article sell it for the purpose of allowing it to be used in the ordinary pursuits of life, and to pass into the market of the country as an ordinary article of commerce, and subject to unrestricted purchase and sale, he waives his right to affix conditions or restrictions to its use and sale, and consents that, after one sale and the payment of one royalty, it shall pass out of the limits of the monopoly. Hawley v. Mitchell, [Case No. 6,250,] distinguished.

[See, contra, American Cotton-Tie Supply Co. v. Bullard, Case No. 294.]

[See note at end of case.]

2. Complainants sold patented buckles for use, in connection with an iron strap, for a tie or fastening to cotton bales. The buckles had printed on them the words "licensed for one use only," and on the bill-head was a notice, either to the same effect, and that they were sold and purchased subject to the restriction, or, that the buckles were the property of the complainants, who reserved the right after such use to recover possession of them wherever found: *Held*, that the purchasers took an unrestricted

[1][Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

[2][Reversed in 106 U. S. 89, 1 Sup. Ct. 52.]

title to the buckles without any reservation in the vendors, and that the case fell within the principles laid down in Goodyear v. Beverly Rubber Co., [Case No. 5,557.] and Washing-Mach. Co. v. Earle, [Id. 17,219.]

[See, contra, American Cotton-Tie Supply Co. v. Bullard, Case No. 294.]

[See note at end of case.]

[In equity. Bill by the American Cotton-Tie Company, Limited, James J. McComb. administrator of Mary T. McComb, deceased, and others, against Simeon W. Simmons and others, to enjoin the infringement of patents Nos. 23,291 and 31,252, and for an accounting. Bill dismissed. Decree reversed on complainants' appeal. American Cotton-Tie Co. v. Simmons, 106 U. S. 89, 1 Sup. Ct. 52.]

S. A. Duncan, for complainants.

B. F. Thurston, for defendants.

SHEPLEY, Circuit Judge. The complainants are engaged in the manufacture and sale of a patented buckle for use in connection with an iron strap for a tie or fastening to cotton bales. There can be no reasonable doubt that cotton-ties sold by defendants are covered by the patents under which complainants claim. Nor does the evidence in this case leave any reasonable doubt that the buckles sold by the defendants are the identical buckles made and sold by the complainants under their patent. The complainants contend that they sold the buckles under a restriction which limited them to one use, and did not convey an unrestricted title, and that the buckles never passed out of the monopoly of the patent. The facts are that the complainants sold the patented buckles with the words printed on them, "Licensed to use once only," and that up to the season of 1876 on the bill-heads and invoices of all their agents were the words: "The cotton-ties sold by this invoice are licensed to be used only as bailing-ties, and are sold and purchased subject to this restriction." During the season of 1876 the following clause was printed on their bills: "The buckles accompanying these bands are the property of the American Cotton-Tie Company, limited, and are licensed to be used for one season only, the company reserving the right after such use to recover possession of them wherever found." The company clearly had the right, in selling a patented article, to put a restriction on its use or sale, and to convey only a restricted title, or to license only a restricted use, and the purchaser under such a restricted title could not convey a greater or better title than he had himself. The law upon this subject was fully stated in Hawley v. Mitchell, [Case No. 6,250,] and affirmed in the supreme court of the United States. 16 Wall. [83 U. S.] 544. But when the proprietor of a patented article sells it for the purpose of allowing it to be used in the ordinary pursuits of life, and to pass into the market of the country as an ordinary article of commerce,

and subject to unrestricted purchase and sale, he waives his right to affix conditions or restrictions to its use or sale, and consents that, after one sale and the payment of one royalty, it shall pass out of the limits of the monopoly. If a manufacturer of patented pins, or nails, or wood-screws, or any similar article, were to affix to his invoice of sale a condition limiting them to one use, and sell them in quantities to retail dealers to be sold again, he must know and intend that they are to pass into the commerce of the country and be sold over and over again, and sold only to persons who would not buy anything less than an unrestricted title. Shall the purchaser of a packing-box be treated as an infringer, and as pirating an invention, because he uses again and for another purpose the screws or nails which held the box together, and which he purchased when he purchased the box and its contents? May he not reasonably presume with regard to articles of this description, that pins, and nails, and screws do not go into the market with an incumbrance upon their title or a restriction on their use, and that he is not bound to trace the title to see if it be unrestricted, for the reason that he may well suppose no one would expect to affix a restriction on the use of such articles which would be operative, or, if he could do so, would ever find purchasers of them? The buckles sold by the complainants belong to this class of articles. They are sold for the purpose of being used to confine a bale of cotton, as a nail or screw confines a packing-box. It appears in evidence that when a bale of cotton is sold it is without tare, and consequently the buckle and the strap it confines are sold and resold with the bale of cotton to which they are attached. If the cotton takes fire or is otherwise damaged, and requires to be rebaled, must the owner put the same buckle back on the same bale, or be liable to the penalties of an infringer?

When the cotton bales are opened for use at the factories, the manufacturer who has purchased the ties and buckles with the cotton, having no further use for them, sells them to the junk-dealer. From the junk-dealer the defendants purchase them and repair them and sell them again. The vendor of the patented buckles sells them to be applied to the bales of cotton with the full knowledge that they will be sold and resold as often as the cotton is sold. They impliedly consent to these unrestricted sales. They cannot under such circumstances be fairly considered as retaining the title to the buckles in themselves, or as parting only with such a restricted title as would require each vendor of the cotton to sell it accompanied with a restriction on the title and use of the buckles. The very purpose of the original sale, with the knowledge of the subsequent use and sales necessarily incident, imply a parting with the unrestricted

title, and a passing out of the limits of the monopoly of the thing sold, as much as it would if the vendor sold patented thread, nails, or screws, to be used in fastening packing-cases to be sold with the goods packed.

The facts in this case show that the owners of the patent buckle intended and contemplated that the purchasers should buy an unrestricted title, inconsistent with any reservation of title or use in the original vendors. Such a sale does not fall within the principle as stated in Hawley v. Mitchell, [supra,] but clearly falls within the language and principle of the decisions in Goodyear v. Beverly Rubber Co., [Case No. 5,557,] and Washing-Mach. Co. v. Earle, [Id. 17,219.] The case is very different from that of the sale of a machine easily identified, and to which a restriction may easily be attached, or where a license to use only may be sold unaccompanied with any title, or accompanied with a restricted title. But when pins, nails, screws, or buckles are sold, if some of them are sold with a restricted and some with an unrestricted title, there are no means of identification which enable the purchaser, after they have passed into the market and common use, to distinguish the articles licensed or restricted in their use from those absolutely sold. In the case of articles of that description, the patentee may fairly be presumed to have received his royalty when he parted with the possession of the articles and allowed them to go into common and general use. The public should not be vexed with litigation about reserved rights or conditions affixed to the title of such articles, or put upon the investigation of incumbrances or restrictions on the title of nails, screws, buckles or pins, before they can be safely used by a person who has bought them of parties who obtained them of the patentee with the right to sell them in the open market. It is more for the interest of inventors that they should obtain their royalty on such articles when they first put them upon the market, than to make the monopoly odious by the attempt to fix restrictions on the subsequent use. Bill dismissed, with costs.

[NOTE. On appeal to the supreme court, this decree was reversed, with an order that the circuit court enter a decree for plaintiffs for an account of profits and damages. Mr. Justice Blatchford, in delivering the opinion of the court, said: "A buckle without a band will not confine a bale of cotton. Although the defendants use a second time buckles originally made by those owning the patents, and put by them on the market, they do not use a second time the original bands in the condition in which those bands were originally put forth with such buckles. They use bands made by piecing together several pieces of the old bands. The band, in a condition fit for use with the buckle, is an element in the third claim of the Brodie reissue. That claim is for a combination of the open slot, arranged to allow of the sidewise introduction of the band: the link or buckle with the single rectangular opening arranged so as to hold both ends of the band and the band.

\* \* \* Whatever right the defendants could acquire to the use of the old buckle, they acquired no right to combine it with a substantially new band to make a cotton-bale tie." American Cotton-Tie Co. v. Simmons, 106 U. S. 89, 1 Sup. Ct. 52. In the circuit court, southern district of New York, in action concerning these same patents, it was held that, the defendant having bought the buckles stamped "Licensed to use once only," and with new hoops, sold them as cotton ties. he had infringed the plaintiff's patents. American Cotton-Tie Supply Co. v. Bullard, Case No. 294.]